*425
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 This appeal raises a question concerning the People’s obligation to seek out and obtain before trial evidence not in their possession or control. In particular in this case, the two money orders now at issue were not otherwise subject to discovery under CPL article 240. They were, however, within the scope of the People’s voluntary disclosure agreement to provide to the defense. The People acquired the two money orders during trial and immediately turned them over to defense counsel.
 

 We conclude that the money orders were properly admitted as evidence in the People’s case-in-chief, because (1) they were not discoverable as a matter of right pretrial; (2) disclosure during trial did not violate the voluntary arrangement; (3) there was no bad faith on the part of the prosecutor; and (4) no undue prejudice as a matter of law infected the trial court’s discretionary ruling. The order of the Appellate Division upholding the conviction, now before us by leave to appeal granted by a Judge of this Court, should therefore be affirmed.
 

 Defendant was an Orange County Deputy Sheriff, assigned as the Commissary Officer for the Orange County Correctional Facility. His responsibilities included administering the Commissary bank account, into which funds were deposited on behalf of inmates for use in purchasing personal items. During defendant’s tenure, he drew at least 38 checks on that account, which were payable to the local post office for the purchase of money orders. An audit revealed numerous irregularities and irreconciliations with respect to the checks and the account. Although the checks were made payable on their face to "Postmaster,” the defendant was proved to have altered the check stub records, maintained at the Correctional Facility, to reflect different payees. An accountant’s analysis of the records revealed approximately $14,000 worth of these checks as suffering from irreconcilable discrepancies. Defendant was convicted after a jury trial of grand larceny in the third degree, falsifying business records in the first degree and official misconduct, arising out of the embezzlement of the checks and the alteration of the records.
 

 About nine months before trial, the People provided defense counsel with a "voluntary disclosure form,” agreeing to allow inspection of "[pjhysical evidence to be introduced at the trial or hearings which is the subject of the Indictment.” The People fully complied with this arrangement as to all physical evi
 
 *426
 
 dence in their possession. The actual money orders that defendant was alleged to have purchased with the unauthorized checks were not produced before trial, because the District Attorney had not obtained them. While some disagreement persists as to the availability, location and effort to find and obtain these records, the dispositive question on this appeal centers on the legal obligation of the prosecution to acquire and disclose such evidence before trial and the consequence for admissibility at trial.
 

 Two weeks into defendant’s trial, the prosecutor announced that two of the money orders had been located and would be offered into evidence. He immediately provided copies to the court and to defense counsel. The two money orders were particularly significant because they were payable to an attorney in partial satisfaction of a debt owed to United Jersey Bank by the defendant. These records thus supplied direct evidence that some of the missing funds had been converted to defendant’s personal advantage. The People also introduced into evidence a copy of the judgment against defendant in favor of United Jersey Bank.
 

 Defense counsel objected to the introduction of the money orders, arguing that they would severely prejudice his client’s defense. Counsel claimed that he had built the defense, including his opening statement, around the absence of any direct documentary evidence that the stolen money had inured to the benefit of the defendant. The District Attorney countered that his office had decided to pursue the money orders around the time the case was ready to go to trial, and soon after a trial court ruling suppressing defendant’s inculpatory admission. As soon as the quest for this documentary evidence proved partially successful, the People immediately turned copies of the money orders over to the defense. The Trial Judge overruled the defense objection and admitted the evidence, offering the defense time for an adjournment to deal with the new evidence as it might deem fit and necessary.
 

 On this appeal, defendant concedes that the People did not have possession of the money orders until after the trial had begun and that they turned the items over immediately. Instead, the claim is one of surprise, prejudice and error as a matter of law derived from defendant’s novel prosecutorial discovery obligation.
 

 At common law, courts were without power to order discovery in criminal cases
 
 (People ex rel. Lemon v Supreme Ct.,
 
 245 NY 24, 28 [Cardozo, Ch. J.]). More recently, in addition to over
 
 *427
 
 arching imperatives premised on constitutional rights and fundamental fairness
 
 (see, e.g., Brady v Maryland,
 
 373 US 83;
 
 Giglio v United States,
 
 405 US 150;
 
 see also, People v Rosario,
 
 9 NY2d 286; CPL 240.40 [1] [c]), the Legislature has prescribed a detailed discovery regimen in New York embodied in article 240 of the Criminal Procedure Law
 
 (see, People v Copicotto,
 
 50 NY2d 222, 225;
 
 see also, People v DaGata,
 
 86 NY2d 40, 44). Items not enumerated in article 240 are not discoverable as a matter of right unless constitutionally or otherwise specially mandated
 
 (People v Copicotto, supra,
 
 at 226, n 3;
 
 see,
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 240.10, at 216-217). No such exceptional circumstances are urged or appropriately at issue in this case or on this appeal. Thus, we turn to the standard discovery rubrics provided by the Criminal Procedure Law.
 

 The CPL does not expressly compel pretrial discovery of evidentiary material — such as the money orders at issue here— which the prosecution intends to introduce at trial
 
 (see,
 
 CPL 240.20). Voluntary inspection of such evidence may be prudent, however, and ought in any event to be encouraged to help prevent delays and potential prejudice
 
 (see, 2
 
 LaFave and Israel, Criminal Procedure § 19.3 [e], at 490 [1984]). Moreover, in the sound exercise of responsible discretion, the trial court may order early prosecutorial disclosure under certain defined circumstances
 
 (see,
 
 CPL 240.40 [1] [c]).
 

 Sound practice is illustrated by what took place here. The prosecution
 
 voluntarily
 
 agreed to allow inspection of all physical evidence in its possession that it
 
 intended
 
 to introduce at trial, and defendant acknowledges that the People fully complied with respect to materials actually in their possession. After the People obtained the money orders midtrial and decided then that they would seek their admission into evidence, the trial court weighed all the circumstances, offered a reasonable opportunity for an adjournment and then properly admitted the evidence. No authority is tendered or discernible that would bar such evidence as a matter of law under these circumstances.
 

 Defendant would raise the People’s obligation a step or two higher than the voluntary agreement to disclose the evidence in their possession before trial. His formulation would additionally require the People to actually
 
 obtain
 
 the money orders before trial, or to show some earnest efforts to acquire the evidence or explain why those efforts failed. Lack of satisfaction of these steps would result in preclusion of any use of the evi
 
 *428
 
 dence. We decline, however, to adopt defendant’s proposed rule. Accepting in this case, without deciding, that the commendable voluntary disclosure agreement created a case-specific duty to provide discovery of such items to the defense in the first place, that duty does not include a concomitant obligation to locate and obtain evidence at any particular moment in the prosecution. The absence of such a legal obligation is especially certain when, as here, the items of evidence were never in the possession or control of the District Attorney, but instead constituted records of the United States Postal Service
 
 (compare, People v Washington,
 
 86 NY2d 189;
 
 People v Flynn,
 
 79 NY2d 879).
 

 Adopting defendant’s argument would result in the anomaly that the conviction might be affirmed if the People had
 
 not
 
 voluntarily agreed to disclose available evidence to be introduced, yet would be reversed because they made such an agreement without, at any given pretrial point, going out and scouring up all the potential evidence, or at least earnestly trying to do so. No good policy purpose would be served in countenancing such a counterproductive disincentive to voluntary disclosure arrangements. Notably, too, the defendant could have anticipatorily moved the trial court, under CPL 240.40 (1) (c), for an order requiring that the items be produced in the court’s discretion. Additionally, defense counsel could have sought a subpoena duces tecum to try to locate and secure the money orders
 
 (see,
 
 CPL 610.20 [3]). Defendant did none of these things, perhaps for his own strategic defense reasons, nor did he even seek the money orders in his discovery demand
 
 (see,
 
 CPL 240.20 [1]). This calculated lack of initiative should not be rewarded by the rule now proposed.
 

 An additional aspect of this case is the defendant’s claim that in formulating his defense, he was entitled to rely on the People’s pretrial representations that they would voluntarily produce evidence to be introduced at trial. We agree that he could reasonably so rely, but that does not entitle him to the sweeping preclusive remedy he now demands, without any authority predicate for this new general postulate. Absent bad faith by the prosecutor
 
 (see, People v Williams,
 
 195 AD2d 986, 987,
 
 lv denied
 
 82 NY2d 905) or undue prejudice to the defendant’s case, or both, a trial court should generally not be said to have ruled erroneously as a matter of law
 
 (see, e.g., People v Kelly,
 
 62 NY2d 516, 520;
 
 see also, People v Cunningham,
 
 189 AD2d 821, 822,
 
 lv denied
 
 81 NY2d 1071;
 
 People v Polanco,
 
 174 AD2d 468). Reversal of this conviction is surely not
 
 *429
 
 warranted here, where there is not even an allegation of bad faith on the part of the prosecutor.
 

 As to defendant’s claim of undue prejudice, the Trial Judge prudently offered defendant an adjournment to deal with the "late” acquisition and production of the documents at trial. The prejudicial impact resulting from the introduction of the money orders also flowed substantially from a tactical decision by defense counsel that misfired. Despite having been told by the District Attorney during jury selection that the prosecutor’s office was attempting to locate the money orders, defense counsel nonetheless risked telling the jury in his opening statement that he did not contest the facts and documents that the People would present, and that there would be no evidence of the defendant’s intent to defraud. Defendant’s counsel, with such advance warning and, therefore, no legally cognizable surprise, should not now be rescued from the failed stratagem because of the prosecutor’s pursuit and acquisition of the key evidence during trial.
 

 Finally, it is pertinent to note that evidence of guilt (for example, of a documentary type as here, or an eyewitness identification or a confession) is always prejudicial in a familiar sense of that word; it is expected and supposed to be so. Merely invoking the word "prejudice” does not, in and of itself, preclude admission of relevant evidence unless some evidentiary prohibition is violated (see,
 
 e.g., People v Buie,
 
 86 NY2d 501, 509;
 
 People v Lewis,
 
 69 NY2d 321, 325; Prince, Richardson on Evidence, § 4-101, at 136 [Farrell 11th ed 1995]). Because no such prohibition exists or applies to these circumstances, the trial court properly admitted the money orders and the Appellate Division correctly affirmed the judgment of conviction.
 

 We have considered defendant’s other claims and conclude that they are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order affirmed.